DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant, the State of Ohio, has appealed from a decision of the Summit County Court of Common Pleas granting Defendant-Appellee, Christopher Davison's, motion to suppress.
 {¶ 2} On August 18, 2003, the Summit County Grand Jury indicted Defendant of one count of possession of cocaine in violation of R.C. 2925.11(A). Defendant pled not guilty to the charge and filed a motion to suppress the evidence on the grounds that the arresting officer did not have a reasonable, articulable suspicion to stop him and perform an investigative search. A hearing on the motion was held on January 28, 2004, and the trial court granted Defendant's motion to suppress. The state has timely appealed the trial court's decision, asserting one assignment of error.
 ASSIGNMENT OF ERROR
"The trial court committed error suppressing the evidence in this case."
 {¶ 3} In the state's sole assignment of error, it has argued that the trial court erred in granting Defendant's motion to suppress. Specifically, the state has contended that the arresting officers had a reasonable suspicion, based on specific and articulable facts, to believe that Defendant was engaged in criminal activity, and thus it was proper to stop him and conduct a brief search. This court agrees.
 {¶ 4} A trial court makes both factual and legal findings when ruling on a motion to suppress. State v. Jones, 9th Dist. No. 20810, 2002-Ohio-1109, at ¶ 9. An appellate court is to accept the trial court's findings of fact that are supported by credible evidence, as the trial court is in the best position to evaluate questions of fact, credibility, and weight of the evidence. State v. Miller (May 23, 2001), 9th Dist. No. 20227, at 5. However, the ultimate question of whether an officer had reasonable suspicion to make an investigatory stop is to be reviewed by an appellate court de novo. Jones at ¶ 9, citingOrnelas v. United States (1996), 517 U.S. 690, 699,134 L.Ed.2d 911.
 {¶ 5} "A law enforcement officer must have a reasonable, articulable suspicion that a person is or has been engaged in criminal activity before he is justified in stopping a vehicle."State v. VanScoder (1994), 92 Ohio App.3d 853, 855, citingTerry v. Ohio (1968), 392 U.S. 1, 21-22, 20 L.Ed.2d 889. After identifying the facts known to the police officer at the time of the stop, an appellate court must decide whether, under a standard of objective reasonableness, those facts would give rise to reasonable suspicion justifying a stop. Ornelas,517 U.S. at 696-697. "No further inquiry beyond the requirement of reasonable suspicion is necessary or warranted." State v. Carlson (1995),102 Ohio App.3d 585, 593. Thus, if the specific and articulable facts available to an officer indicate that a motorist may be engaging in criminal activity, the stop is justified. Id.
 {¶ 6} In determining whether a stop was objectively reasonable, the court must consider the totality of the circumstances. State v. Anderson (1995), 100 Ohio App.3d 688,692. "[T]he circumstances surrounding the stop must `be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" State v.Bobo (1988), 37 Ohio St.3d 177, 179, quoting United States v.Hall (C.A.D.C. 1976), 525 F.2d 857, 859. Facts which could be given an innocent interpretation will support the decision to briefly detain someone for questioning, "so long as one may rationally infer from the totality of the circumstances that the person may be involved in criminal activity." Jones at ¶ 21, citing United States v. Cortez (1981), 449 U.S. 411, 417-418,66 L.Ed.2d 621.
 {¶ 7} In Bobo, the Ohio Supreme Court determined that the officers in question had reasonable suspicion to conduct an investigatory stop based upon a combination of factors, each with a possibly innocent explanation. The court concluded that the reputation of an area for criminal activity, coupled with the time of day, the experience level of the officers involved, their knowledge of how drug transactions occur, suspicious gestures or movements by occupants of a vehicle, and the officers' experience as to what such movements mean can, in their totality create reasonable suspicion of criminal activity. Bobo37 Ohio St.3d at 179-180.
 {¶ 8} Applying Bobo to the facts of this case leads to the conclusion that the investigatory stop of Defendant was proper. The State points to six factors in support of its contention that the officers had reasonable suspicion to stop and search the Defendant. First, the officers testified that they knew through their experience that the area in which they first spotted Defendant was a high drug area. `"The reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely' in determining whether an investigative stop is warranted." (citations omitted) Id. at 179. See, also, State v. Dotson (Dec. 9, 1998), 9th Dist. No. 19053, at 5-6.
 {¶ 9} Second, one of the officers had arrested the Defendant less then a year prior in the same vehicle involving a shooting incident. In the previous incident, the police had found loaded weapons in the car, one of which had been stolen, along with cocaine. `"Past incidents of numerous law violations of a particular character definitely constitute a fact that officers may consider in the totality of circumstances they rely upon[.]"'Bobo, 37 Ohio St.3d at 179, quoting United States v. White
(C.A.D.C. 1981), 655 F.2d 1302, 1304.
 {¶ 10} Third, both officers testified that the Defendant was driving in a circular, or "u-shaped" pattern and was returning to the same area where the police had first observed the Defendant. In State v. Dotson, the court considered it significant that Defendant made several right turns, driving essentially in a circle and effectively remaining in the same area in which she was spotted by the police. Dotson, supra, at 6.
 {¶ 11} Fourth, when the Defendant observed the marked police vehicle behind him, he was continuously looking at the police cruiser in his rear view mirror. Officer Boss testified that, "[h]e was watching us, it appeared to be, as much as he was watching the road." In United States v. Alexander (C.A. 2 1990),907 F.2d 269, 272, the court notes in support of its finding that reasonable suspicion existed to stop the Defendant, that the driver of the car in question "was seen looking repeatedly in the rear view mirror as if to detect possible police surveillance."
 {¶ 12} Fifth, both officers observed the Defendant make several furtive movements to the center console while they were following his car. Officer Boss stated that, based upon his training and experience, when a person dips his shoulders in a particular way, it is normally an indication that the person is attempting to conceal something. In Bobo, the court held that a defendant's furtive movements, combined with other factors give rise to reasonable suspicion. Bobo, 37 Ohio St.3d at 179.
 {¶ 13} Sixth, both of the officers who had stopped Defendant are four-year veterans of the Akron police department and one of them has four years experience patrolling the same high crime and drug area. Both of the officers testified that based on the Defendant's conduct, they believed that he was involved in some type of criminal activity such as hiding a gun.
 {¶ 14} Defendant cites State v. Bogart (Feb. 11, 1994), 11th Dist. No. 93-L-088, to support his proposition that a person cannot be detained solely upon the ground that he has a reputation for engaging in criminal behavior and State v.Crosby (1991), 72 Ohio App.3d 148, to support the proposition that mere presence in a high crime are does not establish the requisite level of suspicion necessary to justify an investigative stop. This court agrees; a police officer may not stop someone based solely on his reputation, or merely because of his presence in a high drug area. However, these cases are factually distinguishable from the case at hand as the officers had substantial indicators of criminal activity. As stated above, reasonable suspicion depends on the totality of the circumstances. Anderson, 100 Ohio App.3d at 692.
 {¶ 15} Each of the factors that the officers articulated, standing alone, may not have given rise to reasonable suspicion to stop and search Defendant; however, when the six facts are viewed together as appraised by an experienced police officer, they provide clear justification to stop Defendant's car and pursue a limited investigation. Terry 392 U.S. at 21, 22, Statev. Freeman (1980), 64 Ohio St.2d 291,294. In ascertaining whether a stop is objectively reasonable, this court must ask: "[W]ould the facts available to the officer at the moment of the seizure or search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry392 U.S. at 22. Under the facts of this case, we find that a reasonable and prudent police officer who observed Defendant's movements, driving pattern, and actions, and knew of his reputation, would have reasonable suspicion to believe that Defendant was engaged in criminal activity.
 {¶ 16} Defendant contends that even assuming the stop of his car was proper, the police were not justified in patting him down for weapons or searching his car for weapons. Appellant contends that the search was reasonable and justified under the circumstances. We agree.
 {¶ 17} "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." Bobo,37 Ohio St.3d 177, paragraph two of the syllabus. The issue is whether a `"reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" State v. Armstrong (1995), 103 Ohio App.3d 416, 423, quoting Terry 392 U.S. at 27. The two police officers stopped the Defendant based upon their belief that he was engaged in some type of criminal activity and asked Defendant to produce his driver's license, which he did. Officer Williams testified that the last time he had dealt with the Defendant it involved a shooting and he found loaded weapons in the car, one of which was stolen. He wanted Defendant to step out of the vehicle to check to see if there were any weapons on the Defendant or in the immediate area around him in the vehicle before he walked back to the police cruiser to run the driver's license. Officer Williams stated that he felt it was necessary to check for weapons for his own safety.
 {¶ 18} The officers testified that they saw Defendant "moving around [in the car], doing something with his right hand in the center of his vehicle." They believed that Defendant may have been hiding a weapon or contraband in the center console of the car. As Officer Williams was patting down the Defendant for weapons, Officer Boss looked in the car towards the center console. The console was "more than large enough to fit one of our full-size nine millimeter weapons inside of it." It was in that console that they found the crack-cocaine which lead to the Defendant's arrest.
 {¶ 19} This court believes that the search of the center console of Defendant's car did not exceed permissible bounds. "The officer's search was narrowly confined to the area toward which the Defendant's suspicious conduct was directed." State v.Smith (1978), 56 Ohio St.2d 405, 409. Officer Williams testified that Officer Boss was in the vehicle "no more than five seconds." As the search was properly restricted by the officers' purpose to "proceed with business without fear of danger" to their safety, this court finds that the search was reasonable. See id. at 410. Therefore, the evidence obtained as a result of the search was improperly excluded.
 {¶ 20} This court finds that the initial stop was justified by a reasonable and articulable suspicion of criminal activity. Likewise, the protective search of Defendant's person and his car were justified by the officer' reasonable concern for their safety and were limited in scope. The trial court's conclusion to the contrary is erroneous, and the State's assignment of error is well taken. Accordingly, we sustain Appellant's assignment of error, reverse the decision of the Summit County Court of Common Pleas, and remand for further proceedings consistent with this opinion.
Judgment reversed and remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
Carr, P.J., Whitmore, J. concur.