OPINION
{¶ 1} Antonio Atchley, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court denied his motions to suppress evidence.
 {¶ 2} At 7:40 p.m., on July 28, 2006, city of Columbus Police Officer Duane Mabry and two other officers, identified only as officers George and Narewski, were on patrol on Jonathan Drive in Columbus, Ohio. The officers observed a vehicle, driven by appellant, pull into the driveway of a residence, occupied by Thomas Haley. The vehicle *Page 2 
parked over part of the sidewalk that ran across the driveway. Officer Mabry testified at trial that, among other things, appellant looked nervous and moved around in the vehicle prior to exiting the vehicle. Appellant exited the vehicle and walked across the lawn toward Haley, who was standing near the house. Mabry recognized appellant from past encounters, including two prior arrests in 2003 and 2005, resulting from appellant carrying firearms. From these past encounters, Mabry knew appellant had never before had a valid driver's license and carried a gun for personal protection. Mabry believed appellant's vehicle was parked illegally over the sidewalk. Mabry and Narewski exited the police cruiser. Mabry walked past appellant approximately 15 feet to reach appellant's vehicle, while Narewski approached appellant and engaged him in conversation. Mabry opened the driver's side door of appellant's vehicle and found a gun located inside a compartment of the door.
 {¶ 3} After retrieving the gun, Mabry returned to appellant, and appellant was placed under arrest and read his constitutional rights, which appellant waived via a signed waiver. Appellant admitted the gun found in his vehicle was his, and officers found a bag of marijuana on appellant's person pursuant to a search incident to arrest. Mabry then informed appellant that he would be charged with regard to the weapon. Appellant was never cited for a parking violation, for driving without a license, or for his possession of drugs.
 {¶ 4} On August 30, 2006, appellant was indicted on one count of carrying a concealed weapon, one count of improper handling of a firearm, and one count of having a weapon while under disability. On October 3 and December 21, 2006, appellant filed motions to suppress evidence obtained from the search of his vehicle, as well as any *Page 3 
statements made thereafter. A suppression hearing was held on January 24, 2007, after which the trial court denied appellant's motions to suppress, finding the officers had a reasonable suspicion to do a cursory search of the areas readily accessible to appellant. On February 27, 2007, appellant pled no contest to the three charges in the indictment. On April 16, 2007, the trial court entered a judgment, finding appellant guilty of the three charges and imposing a sentence of three years of community control. Appellant appeals the judgment of the trial court, asserting the following assignment of error:
 THE TRIAL COURT ERRED BY DENYING DEFENDANT'S MOTIONS TO SUPPRESS THEREBY VIOLATING DEFENDANT'S RIGHTS UNDER THE FOURTH AMENDMENT OF THE U.S. CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION AGAINST UNREASONABLE SEARCHES AND SEIZURES.
 {¶ 5} Appellant argues in his assignment of error that the trial court erred when it denied his motions to suppress. The standard of review with respect to a motion to suppress is limited to determining whether the trial court's findings are supported by competent, credible evidence. State v. Lattimore, Franklin App. No. 03AP-467,2003-Ohio-6829, at ¶ 5. In a hearing on a motion to suppress, the trial court assumes the role of trier of fact, and because the court is in the best position to resolve questions of fact and evaluate the credibility of witnesses, a reviewing court "must accept the trial court's factual findings and the trial court's assessment of witness credibility." Id. However, while "[a]ccepting those facts as true, an appellate court must independently determine, as a matter of law, without deference to the trial court's conclusion, whether the facts meet the applicable legal standard." Id. The state bears the burden of establishing that a warrantless search, which is per se unreasonable, is nevertheless reasonable pursuant to *Page 4 
one or more exceptions to the Fourth Amendment's warrant requirement.Xenia v. Wallace (1988), 37 Ohio St.3d 216, paragraph two of the syllabus.
 {¶ 6} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them, per se, unreasonable unless an exception applies. Katz v. United States (1967), 389 U.S. 347,88 S.Ct. 507. The Ohio Supreme Court has explicitly recognized the following seven exceptions to the requirement that a warrant be obtained prior to a search: (a) a search incident to a lawful arrest; (b) consent signifying waiver of constitutional rights; (c) the stop-and-frisk doctrine; (d) hot pursuit; (e) probable cause to search, and the presence of exigent circumstances; (f) the plain-view doctrine; or (g) an administrative search. See State v. Price (1999),134 Ohio App.3d 464, 468. The ultimate touchstone of the Fourth Amendment is reasonableness. Flippo v. West Virginia (1999), 528 U.S. 11, 13,120 S.Ct. 7. Generally, actions taken by the police are deemed reasonable under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify the action. Brigham City, Utah v. Stuart (2006), 126 S.Ct. 1943, 1948, citing Scott v. United States (1978), 436 U.S. 128, 138, 98 S.Ct. 1717. Accordingly, the officer's subjective motivation is irrelevant to the analysis. See id.
 {¶ 7} In the present case, the state of Ohio, plaintiff-appellee, asserts that the warrantless search of appellant's vehicle was justified based upon two reasons: (1) reasonable suspicion under the warrant exception in Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868; and (2) probable cause under the "automobile exception" in Carroll v.United States (1925), 267 U.S. 132, 45 S.Ct. 280. With regard to the exception in Terry, in that case, the United States Supreme Court held that a police officer may make a brief, *Page 5 
warrantless "investigatory stop" of an individual without probable cause where the officer has a reasonable and articulable suspicion that the individual is or has been involved in criminal activity.
 {¶ 8} After reviewing the circumstances of this case and the applicable case law, we find the search and seizure was authorized byTerry. In his appeal, appellant initially asserts that the trial court failed to address whether an "investigatory stop" ever took place prior to Mabry opening his car door and discovering the gun. Appellant maintains that there was no evidence presented at the hearing that Officers George, Narewski, or Mabry ever initiated such a "stop" prior to the search of his vehicle; rather, Mabry merely walked directly to the vehicle and opened the car door before Narewski made an investigatory stop of appellant. Thus, appellant contends, because there was never a stop, the trial court did not need to reach the issue of whether there existed reasonable and articulable suspicion to justify aTerry stop. However, a review of the record reveals that appellant never raised this issue at any time in the court below. It is well-established that a party cannot raise new issues or legal theories for the first time on appeal. See Stores Realty Co. v. Cleveland (1975),41 Ohio St.2d 41, 43. Specifically with regard to motions to suppress, a defendant must make clear the grounds upon which he challenges the submission of evidence pursuant to a warrantless search or seizure. Xenia, at 218-219. The prosecutor cannot be expected to anticipate the specific legal and factual grounds upon which the defendant challenges the legality of a warrantless search. Id., at 218. The prosecutor must know the grounds of the challenge in order to prepare his case, and the court must know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits. Id. Failure on the part of the *Page 6 
defendant to adequately raise the basis of his challenge to a warrantless search constitutes a waiver of that issue on appeal. Id.
 {¶ 9} Here, nowhere in appellant's written motions to suppress does he maintain that no "investigatory stop" ever took place before the search. Further, a review of the hearing transcript likewise fails to demonstrate that appellant raised the issue in his argument to the trial court. Although appellant complains on appeal that the trial court never addressed this issue, it is clear appellant never argued the issue to the court at any point in the proceedings below. To address this argument for the first time at this stage of the proceedings would be for this court to act as the trial court rather than as an appellate court. Therefore, for these reasons, we find appellant waived the issue for purposes of appeal.
 {¶ 10} Turning to the crux of the matter, we find there existed a reasonable and articulable suspicion that appellant was or had been involved in illegal conduct, sufficient to instigate an investigatory stop. Whether an investigatory stop was based on a reasonable articulable suspicion depends upon the totality of the circumstances.State v. Andrews (1991), 57 Ohio St.3d 86. Factors that may justify an investigative stop include: (1) the location of the stop; (2) the officer's experience, training, or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances. State v. Bobo
(1988), 37 Ohio St.3d 177.
 {¶ 11} Here, Mabry testified as to the events on the evening at issue. Mabry testified that, when appellant pulled into Haley's driveway, he parked over the sidewalk, which is a traffic violation. He also testified that Haley's home was known to have been a place for criminal activity in the past, including arrests for guns and drugs. Mabry saw *Page 7 
appellant "lean forward" in the driver's seat, with his chest coming close to the steering wheel, as if he were trying to stove something below the seat. As soon as Mabry saw appellant exit the vehicle, he recognized him. Mabry testified that he had known appellant for several years based upon prior interactions, including a carrying concealed weapons arrest in 2003, a 2005 arrest for possession of a firearm and crack cocaine, and numerous consensual conversations. Based upon these other contacts Mabry has had with appellant, he knew him never to have a valid driver's license. Further, on prior occasions, appellant had told Mabry that he carried a gun for safety because he had been having a problem with another man in the area. Mabry was also familiar with Haley based upon a prior arrest.
 {¶ 12} Mabry further stated that, when appellant saw him and the other officers pull up to the residence, appellant had a "very nervous" and "panicked" look on his face. His eyes were "wide," his mouth was open, and his forehead "started to bead up with sweat." Appellant also "quickly" exited his vehicle. Mabry stated that appellant was so nervous and fixated on the police presence that he bumped into Haley. Mabry testified that he had in the past talked to appellant and Haley in Haley's front yard, but appellant had never acted nervous like this before. Mabry stated appellant's sweat was induced upon contact with them, not prior. Mabry also stated he makes hundreds of contacts with citizens, and he could recognize when people were nervous. Mabry testified that, based upon all these circumstances, he believed appellant was engaged in criminal activity, specifically, carrying a weapon.
 {¶ 13} The trial court concluded that the officers had reasonable suspicion that criminal activity was taking place and that the suspicion was more than an inarticulable *Page 8 
hunch. We agree. The present case contains many of the same factors enunciated in Bobo, supra, and contains the same facts that myriad other courts have found supportive of reasonable and articulable suspicion. Mabry testified that he was familiar with the location of the stop. Haley's residence had been the scene of prior arrests for gun-and drug-related arrests. See, also, State v. Nelms, Franklin App. No. 06AP-1193, 2007-Ohio-4664, at ¶ 17-18 (that nightclub had been site of prior arrests for drug and weapons violations gave reasonable suspicion to conduct investigative stop); State v. McGary, Trumbull App. No. 2006-T-0127, 2007-Ohio-4766, at ¶ 30 (familiarity with location of stop as being a high-crime area supports reasonable and articulable suspicion); State v. Davison, Summit App. No. 21825, 2004-Ohio-3251, at ¶ 8 (officers' testimony that they knew through their experience that the area had a reputation for criminal activity is an articulable fact upon which a police officer may legitimately rely in determining whether an investigative stop is warranted). Mabry also stated that he and the other officers had prior experience with appellant with regard to gun and drug arrests. See McGary, at ¶ 30 (prior experience with person, including prior arrests, supports reasonable and articulable suspicion);Davison, at ¶ 9 (that one of the officers had arrested the defendant less then a year prior involving a shooting incident in which the police had found loaded weapons and cocaine in the car constituted a fact that officers may consider in the totality of circumstances). Although a person cannot be detained solely upon the ground that the person has a reputation for engaging in criminal behavior, State v. Taylor (2000),138 Ohio App.3d 139, 147-148, where there exist other indicators of criminal activity as part of the totality of the circumstances, such may support reasonable suspicion. See Davison, *Page 9 
supra, at ¶ 14. Here, as discussed, other factors exist to support the officers' reasonable suspicion.
 {¶ 14} Mabry also testified that appellant exhibited nervous behavior, including wide eyes, sweating, and running into his friend while focusing on the police. Although some degree of nervousness during interactions with police officers is not uncommon, State v. Ely, Cuyahoga App. No. 86091, 2006-Ohio-459, at ¶ 20, nervousness can be a factor to weigh in determining reasonable suspicion. See State v.Grant, Medina App. No. 06CA0019-M, 2007-Ohio-680, at ¶ 11 (police officer testified that he was able to discern that defendant looked nervous as they drove past, which supported reasonable suspicion to stop vehicle); State v. Williams (Dec. 12, 2001), Licking App. No. 01-CA-00026 (that defendant appeared too nervous for the circumstances can be one factor to determine reasonable suspicion to perform an investigatory stop). In the present case, Mabry testified that, out of his numerous prior interactions with appellant in the past several years, appellant only appeared nervous during the interactions in which he was eventually found to have been in possession of a gun, stolen property or drugs. Mabry also stated he had extensive experience with interactions with people, and he was able to identify appellant's nervous behaviors. See, also, State v. Roye (June 22, 2001), Greene App. No. 2001 CA 5 (through police officer's training and experience, nervous behavior indicated to him the possibility of illegal activity). Thus, appellant's nervous behavior in the present case could have reasonably raised suspicion.
 {¶ 15} Further, Mabry testified that he had also witnessed appellant leaning down suspiciously in his vehicle, as if reaching under his seat. Such furtive movements could support the officers' reasonable suspicion. See Nelms, supra, at ¶ 17-18 (that occupants *Page 10 
of vehicle behaved in a suspicious manner, each reaching down toward the floor of the vehicle out of the officer's line of sight, provided reasonable suspicion to initiate investigative stop); McGary, at ¶ 30 (the furtive gesture of reaching down toward the floor of the vehicle supported reasonable and articulable suspicion). Mabry's experience suggested that such a movement is often a sign that the driver is attempting to hide contraband. See, also, Davison, supra, at ¶ 12 (officer testified that, based upon his training and experience, when a person dips his shoulders in a particular way, it is an indication that the person is attempting to conceal something). Although a mere furtive gesture, standing alone, may not create sufficient reasonable suspicion in all cases, here the furtive movement was one factor in addition to the many discussed that give rise to a finding of reasonable and articulable suspicion. See Bobo, supra, at 179 (defendant's furtive movements, combined with other factors, give rise to reasonable suspicion). For all the above reasons, we find the police officers had reasonable and articulable suspicion to stop appellant pursuant toTerry.
 {¶ 16} As we have found the investigatory stop of appellant was proper, we must next determine whether the search of appellant's vehicle comported with appellant's Fourth Amendment rights. UnderTerry, a limited protective search of the detainee's person for concealed weapons is justified only when the officer has reasonably concluded that "the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others[.]" Terry, at 24. Further, "[t]he purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence[.]"Adams v. Williams (1972), 407 U.S. 143, 146, 92 S.Ct. 1921. Therefore, where a police officer, during an investigative stop, has a *Page 11 
reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others. Bobo, supra, at paragraph two of the syllabus; State v. Evans (1993), 67 Ohio St.3d 405, 409.
 {¶ 17} However, an officer is not only justified in conducting a limited protective search of the suspicious individual, but is also justified in conducting a limited protective search of the surrounding area within such individual's control, also known as the "lunge area" or "reach area." State v. Borecki (Apr. 28, 1988), Cuyahoga App. No. 53665. Just as a Terry suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a Terry suspect break away from police control and retrieve a weapon from his automobile. See United States v.Rainone (C.A.7, 1978), 586 F.2d 1132, 1134. In addition, if the suspect is not placed under arrest, he will be permitted to re-enter his automobile, and he will then have access to all weapons inside.United States v. Powless (C.A.8, 1977), 546 F.2d 792, 795-796. In light of the principles set forth in Terry, in Michigan v. Long (1983),463 U.S. 1032, 1049-1050, 103 S.Ct. 3469, the United States Supreme Court held that:
 * * * [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer to believe that the suspect may gain immediate control of weapons.
 {¶ 18} In the present case, Mabry testified that, "[d]ue to [appellant's] nervous behavior, his — obviously he parked illegally — his actions and the motions when he was in the vehicle as we pulled up, I opened the door of the vehicle and observed a loaded *Page 12 
firearm in the door of the vehicle." When Mabry opened the door, appellant was ten to fifteen feet away. Mabry testified he searched for the gun because he was concerned for his safety. He did not want appellant to have access to the weapon and harm them or anyone else. Further, as far as he knew at that point, he expected to give appellant access to his vehicle again after the investigatory stop. As indicated above, Mabry had also observed appellant make a furtive movement, as if reaching to someplace inside the vehicle. Mabry additionally knew from past interactions and arrests involving appellant that he carried weapons.
 {¶ 19} Based upon the totality of the circumstances, we conclude that Mabry had a reasonable suspicion that appellant was armed or was close enough to the vehicle that he could have lunged toward the car to retrieve a weapon. In addition, that Mabry believed that they might allow appellant to return to his vehicle necessitated a protective search of any part of the vehicle to which appellant could have quick and easy access to retrieve a weapon. See State v. Roberts, Montgomery App. No. 21221, 2006-Ohio-3042, at ¶ 12 (may conduct protective search of the lunge area inside the vehicle if the defendant may subsequently be permitted to return to the vehicle he was riding in). The furtive movements by appellant inside his vehicle also provided a reasonable basis for Mabry to conduct a protective search. See State v.Williams (1994), 94 Ohio App.3d 538, 544; Roberts, at ¶ 12 (leaning forward caused the officers concern for their own safety, not knowing if the defendant was attempting to conceal or retrieve a weapon). Appellant was also known to the officers to carry guns and appeared nervous, thereby lending further suspicion that appellant had a gun in his vehicle. Therefore, we find the search of appellant's vehicle was proper. For the foregoing reasons, we find the trial court did not *Page 13 
err when it did not suppress evidence based upon the stop of appellant and search of his vehicle, as well as any evidence and statements gathered subsequent to the search as derivative "fruits" thereof.
 {¶ 20} As we have found that the search of appellant's vehicle was proper pursuant to a protective search under Terry, we need not address whether the police could have also searched appellant's vehicle based independently upon probable cause and the "automobile exception" inCarroll, supra. Therefore, appellant's assignment of error is overruled.
 {¶ 21} Accordingly, appellant's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 BRYANT and FRENCH, JJ., concur. *Page 1