DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant Antwan S. Smiley appeals from his convictions and sentence in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} On September 28, 2004, Akron law enforcement officers investigated an area surrounding an apartment complex in a location where there have been numerous complaints of drug activity, violent crime, and prostitution. Shortly before 5:30 p.m., Detective Michael Gilbride, working undercover, drove past a group of males outside the apartments who attempted to flag him down in *Page 2 
order to sell him crack cocaine. At approximately 5:30 p.m., Detective Timothy Harvey, also undercover, set up surveillance about 100 yards from the apartment complex using high-powered binoculars. About 20 minutes later, Detective Harvey observed a blue SUV pull up to the location. Two females exited the vehicle while the driver remained inside. The females walked over to the men standing outside of the apartments. One of the men then went over to the SUV and entered on the passenger's side. After about a minute, the man exited the SUV holding a plastic baggie in the palm of his hand and went back over to the group. Subsequently, the females returned to the SUV and it pulled away. Believing a drug transaction had taken place, Detective Harvey radioed uniformed officers to stop the SUV. Police trailed the vehicle.
 {¶ 3} Sergeant Jason Malick and Sergeant Gerald Forney, uniformed and in a marked police cruiser, stopped the SUV a short distance away from the apartments. Smiley was the driver of the SUV. Upon approaching the SUV, Sergeant Forney observed Smiley make a furtive movement toward the center console. Sergeant Malick observed Smiley pulling his hands away from the center console and also noticed that the cup tray on the console was ajar. Sergeant Forney asked Smiley to step out of the SUV and conducted a pat down with Smiley's consent. Meanwhile, Sergeant Malick searched the center console, believing that a weapon might be inside. The console contained a loaded 9 millimeter handgun, 28 grams of crack cocaine packaged in several baggies, and a *Page 3 
digital scale. Smiley was arrested and the officers seized approximately $365 from him.
 {¶ 4} On October 7, 2004, Smiley was indicted on the following charges: one count of trafficking in cocaine in violation of R.C.2925.03(A)(2), a felony of the first degree; one count of possession of cocaine in violation of R.C. 2925.11(A), a felony of the first degree; and one count of carrying a concealed weapon in violation of R.C.2923.12(A)(2), a felony of the fourth degree. Smiley pled not guilty.
 {¶ 5} On January 12, 2005, Smiley filed a motion to suppress. The trial court held a hearing on that motion on April 22, 2005. On May 6, 2005, the court denied the motion, finding that the traffic stop was based on a reasonable, articulable suspicion of criminal activity and that there was probable cause for the stop, search, and arrest. On February 21, 2006, Smiley filed another motion to suppress, this time claiming that the officers improperly secured his identification. The trial court held a hearing on that motion on August 18, 2006 and denied it on August 30, 2006.
 {¶ 6} On May 17, 2007, the first day of the trial, Smiley's counsel renewed a motion to the trial court to suppress statements that Smiley had made to the police officers. In denying the motion, the trial court determined that Smiley's statements were voluntary and that he was not under interrogation when he made them. *Page 4 
 {¶ 7} On May 22, 2007, the jury found Smiley guilty of possession of cocaine and carrying a concealed weapon. The trial court declared a mistrial on the charge of trafficking in cocaine because the jury was unable to reach a verdict on this count. On June 20, 2007, the trial court sentenced Smiley to a total of three years and six months in prison. Further, the court ordered Smiley to pay a mandatory fine of $10,000.
 {¶ 8} Smiley has timely appealed his convictions, raising three
assignments of error for our review.
 II Assignment of Error Number One "APPELLANT'S CONSTITUTIONAL RIGHTS UNDER THE 5TH (sic) AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 10 OF THE OHIO CONSTITUTION WERE VIOLATED BECAUSE COMPELLED INCULPATORY STATEMENTS MADE AS A RESULT OF CUSTODIAL INTERROGATION WERE OBTAINED IN VIOLATION OF MIRANDA V. ARIZONA, 384 U.S. 436
(1966)."
 {¶ 9} In his first assignment of error, Smiley argues that his constitutional rights were violated because he made compelled inculpatory statements during custodial interrogation prior to being informed of his rights pursuant to Miranda v. Arizona, 384 U.S. 436
(1966). We disagree.
 {¶ 10} As a preliminary matter, the State argues that Smiley waived this issue for appeal by withdrawing his motion to suppress. On February 21, 2006, Smiley's counsel filed the motion to suppress, but withdrew it at the second *Page 5 
suppression hearing because the record lacked the necessary evidentiary support. Smiley's counsel orally renewed the motion immediately prior to trial after becoming aware of additional documentation in the record showing that statements were made by Smiley. The trial court conducted a hearing on the merits and denied it. Crim.R. 12(H) provides that failure by the defendant to timely raise defenses or objections as prescribed by rule constitutes waiver of the defenses or objections unless the court grants relief for good cause shown. The fact that the trial court conducted a suppression hearing on the merits of the renewed motion is tantamount to a determination that good cause was shown pursuant to Crim.R. 12(H). Accordingly, we find that Smiley has not waived this issue on appeal.
 {¶ 11} In making its ruling on a motion to suppress, the trial court makes both legal and factual findings. State v. Jones (Mar. 13, 2002), 9th Dist. No. 20810, at *1. It follows that this Court's review of a denial of a motion to suppress involves both questions of law and fact.State v. Long (1998), 127 Ohio App.3d 328, 332. As such, this Court will accept the factual findings of the trial court if they are supported by some competent and credible evidence. State v. Searls (1997),118 Ohio App.3d 739, 741. However, the application of the law to those facts will be reviewed de novo. Id.
 {¶ 12} "[T]he special procedural safeguards outlined inMiranda are required not where a suspect is simply taken into custody, but rather where a *Page 6 
suspect in custody is subject to interrogation." Rhode Island v.Innis (1980), 446 U.S. 291, 300. "[T]o determine whether a suspect has been `interrogated,' the heart of the inquiry focuses on police coercion, and whether the suspect has been compelled to speak by that coercion. This compulsion can be brought about by express questioning, but also can be brought about by the `functional equivalent' of express questioning, i.e., `any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" (Footnotes omitted.) State v. Tucker
(1998), 81 Ohio St.3d 431, 436, quoting Innis, 446 U.S. at 300.
 {¶ 13} Smiley contends that the statements he made while in custody prior to being informed of his Miranda rights were not voluntary and therefore were in violation of the Fifth Amendment of the U.S. Constitution. However, our review of the record indicates that Smiley was not under interrogation at the time he made the statements. Accordingly, his statements were not compelled.
 {¶ 14} Shortly after Smiley's arrest, Sergeant Malick showed Sergeant Forney the crack cocaine that he had retrieved from the SUV's console and remarked to Sergeant Forney that the cocaine weighed about an ounce. Upon hearing this, Smiley voluntarily indicated that the total weight was less than an ounce. Smiley also volunteered that he found the crack cocaine in a car in Columbus and that he had the gun for protection because he had been the victim of *Page 7 
a shooting. There is no evidence in the record that any of these statements were made as a result of coercion by the police officers. In addition, none of Smiley's statements were made as a result of direct questioning by the officers. Furthermore, we cannot conclude from the record that the officers should have known that Smiley would make a self-incriminatory statement in response to their brief conversation with one another. Similar to Innis, the officers' conversation seemed to be limited to a few off hand remarks and their comments were not particularly "evocative." Innis, 446 U.S. at 303. Smiley was not subject to interrogation prior to being informed of his Miranda rights. Therefore, his statements were not compelled within the meaning ofMiranda.
 {¶ 15} Smiley also claims that even if this Court believes his statements were not compelled, this Court should find under the specific circumstances of this case that the Ohio Constitution is stricter than the U.S. Constitution. An appellant bears the burden of demonstrating error on appeal. See App.R. 16(A)(7). App.R. 16(A)(7) requires that the appellant's brief include an argument containing "the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which the appellant relies." "It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." State v. Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M, at *3. Smiley's brief does not articulate *Page 8 
why this Court should make the requested finding. Smiley has not met his burden on appeal on this claim.
 {¶ 16} Smiley's first assignment of error is overruled.
 Assignment of Error Number Two "THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE INSUFFICIENT EVIDENCE WAS PRESENTED DURING THE SUPPRESSION HEARING IN ORDER FOR THE TRIAL COURT TO MAKE A FINDING THAT THERE WAS REASONABLE SUSPICION OF CRIMINAL ACTIVITY TO JUSTIFY AN INVESTIGATIVE TRAFFIC STOP OF THE APPELLANT. FURTHERMORE, THERE WAS INSUFFICIENT EVIDENCE PRESENTED DURING THE SAME HEARING FOR A FINDING THAT LAW ENFORCEMENT OFFICIALS HAD PROBABLE CAUSE TO SEARCH THE APPELLANT'S VEHICLE WITHOUT A WARRANT."
 {¶ 17} In his second assignment of error, Smiley argues that the trial court improperly denied his motion to suppress. Specifically, Smiley argues that the State failed to present sufficient evidence to find reasonable suspicion of criminal activity in order to justify an investigatory stop of the SUV. Further, Smiley contends that the State's evidence was insufficient for the trial court to find that the police officers had probable cause to enter and search the SUV. This Court disagrees.
 {¶ 18} In analyzing Smiley's argument, we incorporate the standard of review set forth in the previous assignment of error.
 {¶ 19} First, we will consider the question of whether there was sufficient evidence to justify an investigatory stop. "A law enforcement officer must have a *Page 9 
reasonable, articulable suspicion that a person is or has been engaged in criminal activity before he is justified in stopping a vehicle."State v. Davison, 9th Dist. No. 21825, 2004-Ohio-3251, at ¶ 5, quotingState v. VanScoder (1994), 92 Ohio App.3d 853, 855. In analyzing whether reasonable suspicion existed, this Court looks to "the facts available to the officer at the moment of the seizure or the search" and considers whether those facts would "warrant a man of reasonable caution in the belief that the action taken was appropriate." (Internal quotations omitted.) State v. Bobo (1988), 37 Ohio St.3d 177, 178-79, quotingTerry v. Ohio (1968), 392 U.S. 1, 21-22. This Court has noted that:
 "The Ohio Supreme Court has identified certain specific and articulable facts that would justify an investigatory stop by way of reasonable suspicion, factors which fall into four general categories: (1) location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances. No single factor is dispositive; the decision must be viewed based on the totality of the circumstances." (Internal citations omitted.) State v. White, 9th Dist. No. 05CA0060, 2006-Ohio-2966, at ¶ 16.
 {¶ 20} Smiley contends that pulling a vehicle into a parking lot and remaining in the vehicle while other individuals enter and exit the vehicle does not rise to the level of reasonable suspicion. Yet, the State points to several facts to justify the investigative stop of Smiley. First, the area in which the actions occurred is one of the top three drug trafficking areas of Akron. Next, Detective Gilbride observed several men flagging down cars for drug sale purposes and was himself flagged down by some of the same men. Shortly thereafter, Detective *Page 10 
Harvey observed a blue SUV, driven by Smiley, stop at the location. Two females exited the SUV to join the men while Smiley remained in the driver's seat. One of the men entered the SUV on the passenger side for about a minute and exited the vehicle with a white plastic baggie in the palm of his hand. Finally, the State points to the narcotics officer training and experience of Detective Harvey in making a reasonable inference that an exchange of drugs had taken place. We agree that these facts are persuasive in justifying the investigative stop. SeeWhite at ¶ 16-20 (discussing factors that give rise to reasonable suspicion).
 {¶ 21} The trial court found that based on the totality of the circumstances, the stop and search of the SUV driven by Smiley was based on a reasonable, articulable suspicion that criminal activity was afoot. Upon review of the record, we agree.
 {¶ 22} Having determined that there was reasonable, articulable suspicion to justify the investigatory stop, we now turn to the question of whether there was probable cause to conduct a warrantless search of the vehicle Smiley was driving.
 {¶ 23} "Where a police officer, during an investigatory stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." Bobo, 37 Ohio St.3d 177 at paragraph two of the syllabus. In State v. Davison, while making an investigatory stop based on reasonable suspicion of criminal activity, police officers observed the defendant making furtive *Page 11 
movements toward the center of the vehicle causing them to believe there may be a weapon or contraband in the center console. Davison at ¶ 18. This Court noted that the search was properly restricted to the officers' purpose of protecting their safety and held that the search was reasonable. Id. at ¶ 19.
 {¶ 24} Similarly in the present case, during the investigatory stop of the vehicle, Sergeant Forney observed Smiley making furtive movements toward the center console. In addition, Sergeant Malick observed Smiley moving his hands away from the console and saw that the cup holder tray on top of the console was ajar. Sergeant Malick also observed that Smiley was acting nervous. Based on his experience, Sergeant Malick believed that there might be a weapon in the console. After Smiley was out of the vehicle, Sergeant Malick conducted a limited protective search of the center console to make sure that there was no weapon within Smiley's reach. We agree with the State that, based on the totality of the circumstances, these facts support a finding that the search of the console was reasonable. The trial court did not err in denying Smiley's motion to suppress.
 {¶ 25} Smiley's second assignment of error is overruled.
 Assignment of Error Number Three "THE APPELLANT'S RIGHTS TO EQUAL PROTECTION AND DUE PROCESS, AS GUARANTEED BY THE CONSTITUTIONS ADOPTED BY THE STATE OF OHIO AND THE UNITED STATES OF AMERICA, WERE VIOLATED BY THE SENTENCE HE RECEIVED BY THE TRIAL COURT AS MANDATED BY THE 2925.11 AND 2929.13." (Sic). *Page 12 
 {¶ 26} In his third assignment of error, Smiley challenges the constitutionality of the drug possession statute, R.C. 2925.11, and the constitutionality of the sentencing guidelines statute, R.C. 2929.13. Because we find that Smiley has failed to preserve this issue for appeal, we decline to consider the merits of his argument.
 {¶ 27} "Ordinarily, to preserve a trial court error for appeal, an objection must be timely raised to the trial court, where the purported error may be corrected, or else the objection is forfeited; it may not be raised for the first time on appeal." State v. Hairston, 9th Dist. No. 05CA008768, 2006-Ohio-4925, at ¶ 8, citing to U. S v. Olano (1993),507 U.S. 725, 731. In State v. Dudukovich, 9th Dist. No. 05CR008729,2006-Ohio-1309, this Court held that a defendant must raise the issue of constitutionality of Ohio's sentencing statutes at the trial court in order to preserve the argument for appeal.
 {¶ 28} A review of the record reflects that Smiley did not raise any objections to his sentence and specifically did not challenge the constitutionality of the Ohio statutes in the trial court. Therefore, he has forfeited his right to appeal this issue. "[I]f a party forfeits an objection in the trial court, reviewing courts may notice only `[p]lain errors or defects affecting substantial rights.'" State v. Payne,114 Ohio St.3d 502, 2007-Ohio-4642, at ¶ 15. But, "this Court will not reach the merits of an issue when an appellant forfeits that issue at trial by failing to raise it and subsequently fails to argue plain error on appeal." State v. *Page 13 Woodson, 9th Dist. No. 07CA0044, 2008-Ohio-1469, at ¶ 11, citingState v. Romandetti, 9th Dist. No. 23388, 2007-Ohio-363, at ¶ 5-10;Hairston at ¶ 11. Smiley has not raised a claim of plain error on appeal. Accordingly, we decline to consider the merits of his constitutional argument.
 {¶ 29} Smiley's third assignment of error is overruled.
 III {¶ 30} Smiley's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 14 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 SLABY, J., MOORE, P. J., CONCUR *Page 1