OPINION *Page 2 
{¶ 1} Defendants-appellants, Alfonso C. Mendoza and Michael O. Champagnie, appeal from the judgments of the Franklin County Court of Common Pleas finding each defendant guilty of one count of possession of marijuana, in violation of R.C. 2925.11. Defendants together assign one error:
 [I.] THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS.
Mendoza also assigns a second error:
 [II] THE TRIAL COURT ERRED BY INDICATING THAT A "GUILTY" PLEA WAS ENTERED WHEN IN FACT, DEFENDANT ENTERED A "NO CONTEST" PLEA.
Because the trial court did not err in denying defendants' motions to suppress, but erred in indicating Mendoza entered a guilty plea, we modify the trial court's judgment to reflect Mendoza entered a no contest plea, and affirm as modified.
 {¶ 2} During the evening of July 20, 2007, undercover officers assigned to the Strategic Response Bureau of the Columbus Division of Police conducted a stakeout of a parking lot where drug trafficking was known to occur. To support the undercover officers, two or three patrol units were waiting out of sight nearby; a canine unit also was ready to respond, if needed. Undercover officers watched the lot for approximately four hours without seeing any suspicious activity.
 {¶ 3} Two vehicles, a Chevy Silverado and a Chevy Envoy, then entered the lot together, parked away from all the other cars, and left on their headlights. No one got out of the vehicles until a few minutes later, when a third vehicle, a Jeep, pulled up to them. *Page 3 
At that time, the passenger in the Silverado exited his vehicle, walked up to the driver's side of the Jeep, and touched closed fists with the driver. The Silverado passenger then reentered his vehicle, and all three vehicles left the parking lot about a minute later. Champagnie was driving the Silverado; Mendoza was his passenger.
 {¶ 4} The undercover officers, located approximately 10 to 20 yards away from the three vehicles, were unable to see any money or narcotics exchanged. Detective David LaRoche, however, testified that, based on his experience as a "buy" officer on undercover narcotics investigations, the purpose of touching closed fists is to keep anyone from seeing the exchange of money and narcotics during the drug deal. Likewise, Detective William Best, who also witnessed the fist bump, described it as "typical — you can conceal heroin, crack cocaine, anything in the palm of your hand. Real quick drop it off. Pick up your money same hand and you're out." (Mar. 12, 2008 Suppression Hearing Tr. 52.)
 {¶ 5} Although the undercover officers found the actions they just had witnessed to be suspicious, they did not actively pursue the three vehicles because they wanted both to protect their cover and to not advertise that the parking lot was under surveillance. For these reasons, the three vehicles were not pulled over in the parking lot but were allowed to depart. At the request of the undercover officers, patrol units followed them. The Silverado and the Jeep headed south on Interstate 71; the third left by another route, and police lost contact with it.
 {¶ 6} The patrol units followed the Silverado and the Jeep several miles down the interstate until the Jeep exited the highway and stopped at a gas station. At that point, the *Page 4 
patrol units tailing both vehicles stopped them. According to Officer Matthew Hammond, who pulled over defendants' vehicles, he obtained defendants' driver's licenses and requested a LEADS checks for each. The canine unit arrived, and the police dog "hit" on the vehicle, indicating the possible presence of drugs. Hammond then searched the Silverado where he found 11.96 pounds of marijuana and over $14,000 in cash.
 {¶ 7} By indictment filed September 10, 2007, defendants were each charged with one count of possession of marijuana. After the trial court denied their suppression motions, defendants entered no contest pleas. The trial court found defendants guilty, sentencing each to three years of community control.
I. Shared Assignment of Error — Denied Motion to Suppress {¶ 8} In their joint assignment of error, both defendants contend the trial court erred in denying their motion to suppress the evidence of marijuana found when police searched the Silverado.
 {¶ 9} "[A]ppellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact."State v. Vest, 4th Dist. No. 00CA2576, 2001-Ohio-2394. Thus, an appellate court's standard of review of the trial court's decision denying the motion to suppress is two-fold. State v. Reedy, 10th Dist. No. 05AP-501, 2006-Ohio-1212, at ¶ 5, citing State v. Lloyd (1998),126 Ohio App.3d 95, 100-01. Because the trial court is in the best position to weigh the credibility of the witnesses, "we must uphold the trial court's findings of fact if they are supported by competent, credible evidence." Reedy, citing State v. Klein (1991), 73 Ohio App.3d 486, 488. We nonetheless must independently determine, as a matter of law, whether the facts meet *Page 5 
the applicable legal standard. Reedy, citing State v. Claytor (1993),85 Ohio App.3d 623, 627.
 {¶ 10} Defendants argue the warrantless stop and subsequent search of their vehicle violated their Fourth Amendment rights. They maintain the initial stop was illegal because the police lacked reasonable suspicion necessary to justify an investigatory stop. Defendants also claim the warrantless search was illegal because not only were they detained for an unreasonable length of time, but police developed probable cause for the search only after the unlawful stop and unreasonable delay. Defendants thus contend the trial court erred when it did not grant their motion to suppress.
 {¶ 11} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. Katz v. United States (1967),389 US 347, 357, 88 S.Ct. 507, 514. The applicable exception at issue here is the investigative stop, commonly referred to as theTerry stop. See Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868. UnderTerry, a police officer may stop an individual without probable cause when the officer has a reasonable suspicion based on articulable facts that criminal activity is afoot. Id. at 21, 88 S.Ct. at 1880.
 {¶ 12} The propriety of an investigative stop must be viewed in light of the totality of the surrounding circumstances. State v. Bobo (1988),37 Ohio St.3d 177. Since the purpose of a Terry stop is not to accuse, but to investigate whether a crime has been or may be committed, "[e]ven facts that might be given an innocent construction will support the decision to detain an individual momentarily for questioning" as long as it is *Page 6 
reasonable to infer from the totality of the circumstances that the individual may be involved in criminal activity. City of Pepper Pike v.Parker (2001), 145 Ohio App.3d 17, 20, citing United States v.Cortez (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 694-95.
 {¶ 13} "In Bobo, the Ohio Supreme Court determined that the officers in question had reasonable suspicion to conduct an investigatory stop based upon a combination of factors, each with a possibly innocent explanation." State v. Davison, 9th Dist. No. 21825, 2004-Ohio-3251, at ¶ 7, citing Bobo, at 179-80. Among the factors the Bobo court deemed sufficient to create a "reasonable suspicion of criminal activity" were "the reputation of an area for criminal activity, coupled with the time of day, the experience level of the officers involved, their knowledge of how drug transactions occur, suspicious gestures or movements by occupants of a vehicle, and the officers' experience as to what such movements mean." Id.
 {¶ 14} Within those parameters, the totality of the circumstances present in this case gave police officers reasonable suspicion that defendants were engaged in a drug transaction. Indeed, the present case contains many of the same factors both enunciated in Bobo, supra, and determined in many other cases to support the conclusion that police possessed a reasonable and articulable suspicion to support aTerry stop. See State v. Atchley, 10th Dist. No. 07AP-412,2007-Ohio-7009, at ¶ 13, and the cases listed therein.
 {¶ 15} Initially, defendants were spotted in a location known for drug dealing. While mere presence in a high crime area by itself fails to supply reasonable suspicion, State v. Wells (1990), 68 Ohio App.3d 648,650, "[p]ast incidents of numerous law violations of a particular character definitely constitute a fact that officers may consider in the totality of *Page 7 
circumstances they rely upon." Bobo, at 179, citing United States v.Magda (C.A.2, 1976), 547 F.2d 756, 758, cert. denied (1977),434 U.S. 878, 98 S.Ct. 230.
 {¶ 16} Next, the two undercover officers deployed here had 13 and 15 years experience as police officers, respectively, with three and eight years experience working undercover where they handled narcotics and robbery cases. Both testified they had made hundreds of narcotics arrests and, more importantly, each had purchased narcotics as part of undercover investigations. The experience of the undercover officers in this case warrants consideration when assessing whether the police possessed reasonable suspicion, based on the totality of the circumstances, before conducting the investigatory stop of defendants. See Bobo, supra, quoting United States v. Hall (C.A.D.C. 1976),525 F.2d 857, 859 (noting "[t]he circumstances surrounding the stop must be `viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training'").
 {¶ 17} Under the Bobo factors, defendants' actions also contribute to a finding of reasonable suspicion. Although "a mere furtive gesture, standing alone, may not create sufficient reasonable suspicion in all cases," Atchley, at ¶ 15, defendants' actions, when considered in light of the totality of the circumstances, appear suspicious. Defendants' vehicle was parked alongside another vehicle, each with headlights still lit, in the corner of the parking lot a distance away from any other parked vehicles or the entrance to the facility. The occupants remained inside their respective vehicles until a third vehicle arrived. At that point, Mendoza exited the Silverado and exchanged a closed fist handshake with the occupant of the third vehicle. Significantly, the observing undercover *Page 8 
officers knew the hand gesture as a means of exchanging drugs and money. While purchasing drugs during other undercover operations, the officers had themselves exchanged drugs and money in such a manner. The vehicles then quickly left, making the interaction appear even more suspicious.
 {¶ 18} The sum total of these facts rebuts defendants' contention that the police were operating solely on a vague suspicion or a hunch. Although this court held that "an officer's belief that someone is `up to something' or that their actions are `not normal' does not necessarily justify a reasonable suspicion that criminal activity is afoot," State v. Guinn (June 1, 2000), 10th Dist. No. 99AP-630, in this case the officers testified that they witnessed behavior consistent with a narcotics transaction in an area known for such activity. The officers thus were acting on more than a mere hunch. Given all of the noted factors, the police officers had a reasonable and articulable suspicion to stop defendants pursuant to Terry.
 {¶ 19} Defendants next contend the length of their detention was unreasonable, rendering the search a violation of their constitutional search and seizure rights. Defendants' argument rests on their claim that the police, waiting for the arrival of the police dog, detained them for 52 minutes after the initial stop. In support of their timeline, defendants point first to Hammond's testimony that his report indicated he arrested defendants at 10:25 p.m. and then to Best's statement that the police dog search took place at 11:17 p.m.
 {¶ 20} The testimony of Officer Charles Distelhorst, who deployed the police dog utilized that night, contradicts defendants' timeline. According to Distelhorst, he received *Page 9 
the initial request at 10:28 p.m. and arrived at the first vehicle at 10:33 p.m., where he conducted a search. He then went to defendants' vehicle and deployed the dog at that location at 10:35 p.m., completing the search at 10:40 p.m.
 {¶ 21} In response, defendants contend the time of 10:40 p.m. referred to in Distelhorst's testimony describes when he completed searching the first car, not defendants' vehicle. Distelhorst, however, was directly asked if the 10:40 p.m. time reference pertained to the first vehicle. Distelhorst replied, "I would say 10:40 probably [is] the cleared time on the second vehicle," noting the vehicles "were probably within 300 yards of each other." (Tr. 86.) After further questioning, Distelhorst reiterated, "I believe 10:40 is when I was done, completely done with both vehicles." (Tr. 87.) Moreover, other parts of Hammond's testimony contradict defendants' timeline. Hammond stated he was still running background checks on defendants when the canine unit arrived, and he estimated "no more than 15" minutes elapsed between the time defendants were stopped and the canine unit alerted on their vehicle. (Tr. 101.)
 {¶ 22} In its decision, the trial court found the police officers' testimony credible, and on that basis it determined "a diligent means of investigation was pursued and was of such a nature (the canine sniff) to quickly confirm or dispel the suspicions of the detectives. As such, the duration of the stop was reasonable." (Apr. 8, 2008 Decision and Entry, 5.) Since competent, credible evidence supports the trial court's finding of fact with regard to the length of time between the initial stop and the canine search of defendants' vehicle, we defer to the factual finding. Reedy, supra. *Page 10 
 {¶ 23} Moreover, we agree that the duration was not unreasonable. In assessing the timeliness of a detention pursuant to an investigatory stop, "it is appropriate to consider whether police diligently pursued investigation likely to quickly confirm or dispel their suspicions."State v. French (1995), 104 Ohio App.3d 740, 748, citing United Statesv. Sharpe (1985), 470 U.S. 675, 105 S.Ct. 1568. Here, LaRoche testified the canine unit was placed on alert before the undercover operation started that evening. Distelhorst testified he was called to the scene of the investigatory stop only three minutes after the suspects were pulled over, and Hammond testified he still was conducting background checks when the canine unit arrived. Defendants offered no evidence to rebut the state's testimony. On such facts, we cannot say defendants were unreasonably or unnecessarily detained. See State v. Ramirez, 9th Dist. No. 04CA0024-M, 2004-Ohio-6541 (holding that a 26-minute detention while awaiting the arrival of a drug-sniffing dog was not unreasonable).
 {¶ 24} Because police possessed reasonable suspicion that defendants were engaged in criminal activity before conducting the investigative stop, and because the length of detention was not excessive, the search of the vehicle was proper. The trial court did not err in denying defendants' motion to suppress. Defendants' shared assignment of error is overruled.
II. Mendoza's Assignment of Error — No Contest Plea {¶ 25} Mendoza's second assignment of error asserts the trial court erred when it stated in its judgment entry that Mendoza entered a guilty plea to the indicted offense, as he actually entered a no contest plea. *Page 11 
 {¶ 26} Mendoza correctly points out a clerical error in the trial court's July 16, 2008 judgment entry. Although the entry states Mendoza entered a guilty plea, the record from the plea and sentencing hearing reflects that Mendoza entered a no contest plea, not a guilty plea. Pursuant to Crim. R. 36, which permits a court to correct at any time clerical mistakes arising from oversight or omission, we modify Mendoza's judgment entry to correctly state Mendoza entered a no contest plea.
 {¶ 27} Having overruled defendants' shared assignment of error, but having sustained Mendoza's second assignment of error, we (1) affirm as modified the judgment of the trial court regarding Mendoza in case No. 08AP-645, and (2) affirm the judgment of the trial court regarding Champagnie in case No. 08AP-689.
No. 08AP-645 affirmed as modified; No. 08AP-689 affirmed.
 BROWN and SADLER, JJ., concur. *Page 1