[Cite as *State v. Diamond*, 2019-Ohio-2527.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | No. 18AP-489 |
| | | (M.C. No. 2017 CRB 023639) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Rusty Diamond, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on June 25, 2019

**On brief:** *Zach Klein,* City Attorney, *Lara N. Baker, Melanie R. Tobias,* and *Orly Ahroni,* for appellant. **Argued:** *Orly Ahroni.*

**On brief:** *Campbell Law, LLC,* and *April F. Campbell*, for appellee. **Argued:** *April F. Campbell.*

APPEAL from the Franklin County Municipal Court

LUPER SCHUSTER, J.

{¶ 1}  Plaintiff-appellant, State of Ohio, appeals from a decision and entry of the Franklin County Municipal Court granting in part and denying in part the motion to suppress of defendant-appellee, Rusty Diamond.  For the following reasons, we reverse.

## I.  Facts and Procedural History

{¶ 2}  By complaint filed November 11, 2017, the state charged Diamond with one count of domestic violence in violation of R.C. 2919.25, a first-degree misdemeanor; and one count of assault in violation of R.C. 2903.13, a first-degree misdemeanor.  The complaint stemmed from an incident in which T.T., Diamond's girlfriend and the mother of Diamond's child, called 911 alleging Diamond bit her on the nose.  Diamond entered a plea of not guilty and requested a jury trial.

{¶ 3}   Subsequently, on January 29, 2018, Diamond filed a motion to suppress (1) the evidence police obtained following their warrantless entry into Diamond's residence; (2) T.T.'s 911 call; and (3) Diamond's various statements made to police both before and after police gave him *Miranda*[1] warnings.  The state opposed the motion, and the trial court set the matter for a hearing.

{¶ 4}   At the suppression hearing on April 12, 2018, Joshua Bell, an officer with the Columbus Division of Police, testified that on November 10, 2017 he responded to a dispatch to 340 South Powell Avenue where a woman reported having been struck by her child's father and was requesting police presence.  The state played T.T.'s 911 call during the hearing during which she says, through sobs, that Diamond bit her nose in front of their son and that she was bleeding.  Officer Bell testified he responded to the scene, without running lights and sirens on his police cruiser, with his partner, Officer Jared Randall.

{¶ 5}   The state also played the video recording from Officer Bell's body camera.  As depicted in the video, Diamond's house had a solid front door with an accompanying screen door in front of it.  When the officers arrived at Diamond's residence and shone their flashlights at the windows, Diamond opened the inner door, stated everything was fine, and said he only opened the door to determine the source of the lights.  The officers told Diamond to come outside to talk to them and opened the screen door.  T.T. is visible in the video behind Diamond and can be heard talking.  Officer Bell testified that T.T. was more visible in person than she is on the video and that she had blood on her.  Further, Officer Bell testified he could hear T.T. contradicting Diamond's assertions that everything was fine.

{¶ 6}   Diamond did go outside with the officers to talk to them, at which point T.T.'s son began screaming "daddy."  (State's Ex. A at 23:57:24-59.)  At that point, T.T. took her son farther into the house and away from the officers out front, but she did not close the inner door.  After talking to Diamond for a few minutes but without asking for explicit permission to enter the house from either Diamond or T.T., Officer Bell entered the house and walked to the kitchen where he encountered T.T. and her son.  T.T. had blood on her

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

nose, shirt, and pants. While inside the house, Officer Bell obtained an official statement from T.T. regarding the incident.

{¶ 7} After talking with and observing T.T., Officers Bell and Randall handcuffed Diamond, searched his person, and placed him in a police cruiser. Once inside the cruiser, but before the officers read Diamond his *Miranda* rights, Diamond talked to the officers for approximately one hour. The state also played the video recording from the camera inside the police cruiser. Though Diamond admitted that he and T.T. would argue, he denied that he either bit or hit T.T.

{¶ 8} The officers then recited the *Miranda* rights to Diamond, and he initially requested a lawyer. Subsequently, however, Diamond indicated that he wanted to continue to talk to the police, and he again denied that he had bitten or harmed T.T. When the officers confronted Diamond about T.T. having a bloody bite mark on her nose, Diamond stated that T.T. had somehow managed to bite herself on the nose in an attempt to frame him.

{¶ 9} Following the hearing, the trial court accepted additional briefing from the parties on the issues raised at the hearing. In a June 11, 2018 decision and entry, the trial court granted in part and denied in part Diamond's motion to suppress. Specifically, the trial court denied Diamond's motion to suppress as it related to the 911 call and Diamond's statements to police both before and after he received his *Miranda* rights. However, the trial court also concluded that because no exigency existed by the time police arrived at the scene and because police never obtained explicit consent to enter the home, suppression was warranted for all evidence obtained as a result of the illegal entry, including the body camera footage obtained inside the house and T.T.'s statement. The state timely appeals pursuant to Crim.R. 12(K) and R.C. 2945.67(A).

## II. Assignments of Error

{¶ 10} The state assigns the following errors for our review:

> [1.] The trial court erred in finding that the warrantless entry into the home was unlawful and not justified by the exigent circumstances/emergency aid exception to the warrant requirement and suppressing the evidence obtained as a result of the entry.

[2.] The trial court erred in finding that the police unlawfully entered the home without consent and suppressing the evidence obtained as a result of the entry.

For ease of discussion, we address the state's assignments of error out of order.

## III.  Second Assignment of Error – Consent

{¶ 11} In its second assignment of error, the state argues the trial court erred in concluding that police unlawfully entered the home without consent and granting Diamond's motion to suppress on that basis.

{¶ 12} " 'Appellate review of a motion to suppress presents a mixed question of law and fact.  When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " (Citations omitted.)  *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶ 13}  The trial court granted in part Diamond's motion to suppress on the grounds that the officers did not obtain consent to enter the home and because exigent circumstances did not exist to justify the warrantless entry.  The Fourth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, as well as Article I, Section 14 of the Ohio Constitution, prohibit the government from conducting warrantless searches and seizures, rendering them per se unreasonable unless an exception applies.  *State v. Mendoza*, 10th Dist. No. 08AP-645, 2009-Ohio-1182, ¶ 11, citing *Katz v. United States*, 389 U.S. 347, 357 (1967), *superseded by statute on other grounds*.  Courts must exclude evidence obtained by searches and seizures that violate the Fourth Amendment.  *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 181.

{¶ 14} In granting in part Diamond's motion to suppress, the trial court stated that Officer Bell did not obtain consent and then proceeded to analyze the matter to determine whether exigent circumstances justified the entry into the home.  However, the trial court

limited its consideration of consent to Diamond's explicit consent and did not consider whether T.T. provided consent to enter the home.

{¶ 15} "One specifically established exception to the warrant requirement is 'a search that is conducted with consent.' " *State v. Hawkins*, 10th Dist. No. 15AP-35, 2016-Ohio-1404, ¶ 98, quoting *State v. Portman*, 2d Dist. No. 2013-CA-68, 2014-Ohio-4343, ¶ 11, citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). "Further, '[c]onsent to search can be "obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises." ' " *Hawkins* at ¶ 98, quoting *Portman* at ¶ 11, quoting *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). So long as a third party who possesses common authority over the property voluntarily consents to the search, law enforcement officers may conduct a search without a warrant. *Hawkins* at ¶ 98, citing *State v. Reynolds*, 9th Dist. No. 19062 (Oct. 27, 1999), citing *United States v. Matlock*, 415 U.S. 164 (1974). " ' "Common authority" exists when two or more persons have joint access or control over the property, each has the right to consent to permit inspection, and each has assumed the risk that any one of them might so consent.' " *Hawkins* at ¶ 98, quoting *Reynolds*, citing *Matlock* at 172, fn. 7. Moreover, " '[e]ven if an officer erroneously believes that a third-party is authorized to give consent, using an objective standard, third-party consent is valid if an officer looking at the then-available facts could reasonably conclude that the third-party had apparent authority to consent.' " *Hawkins* at ¶ 99, quoting *Portman* at ¶ 13.

{¶ 16} Here, T.T. called 911 requesting police assistance and was occupying the residence when police arrived. The Supreme Court of Ohio has held that when a person has access to a home and calls for the authorities to respond, police then have "ample reason to believe that [the third-party] had authority to consent to a search of the home," rendering the search valid. *State v. Tibbets*, 92 Ohio St.3d 146, 166 (2001). Thus, we conclude T.T.'s act of calling for police assistance and her not objecting when police came inside the residence to assess her needs constituted her consent to enter, and the police had the requisite reasonable belief that T.T. had apparent authority to give consent. The trial court's failure to consider whether T.T. provided the requisite consent to enter the premises, or, alternatively, failure to construe T.T.'s actions as providing consent, was erroneous.

{¶ 17} Having concluded T.T. provided consent for the officers to enter the home, the trial court erred in granting in part Diamond's motion to suppress on the grounds of lack of consent. Thus, the trial court erred in suppressing the body camera footage obtained inside the home and T.T.'s statements to the officers. Accordingly, we sustain the state's second assignment of error.

## IV. First Assignment of Error – Exigent Circumstances

{¶ 18} In its first assignment of error, the state argues the trial court erred in concluding exigent circumstances did not exist to justify the warrantless entry into the home. However, having determined in our resolution of the state's second assignment of error that the police officers had T.T.'s consent to enter the home, the state's first assignment of error is moot.

## V. Disposition

{¶ 19} Based on the foregoing reasons, the trial court erred in determining police officers did not have consent to enter the home, and it erred in suppressing the body camera footage obtained inside the home and T.T.'s statement based on that erroneous conclusion. Having sustained the state's second assignment of error, rendering moot the state's first assignment of error, we reverse the judgment of the Franklin County Municipal Court and remand this matter to that court for further proceedings consistent with this decision.

*Judgment reversed; cause remanded.*

BRUNNER and BEATTY BLUNT, JJ., concur.

BRUNNER, J., concurring.

{¶ 20} I concur in the majority decision sustaining the state's second assignment of error because T.T. gave consent for the police to enter the home she shared with Diamond when she called 911 to request aid in her home. She had left the door open for the officers and welcomed the officer's aid when he entered the home. The warrantless entry was justified by her consent and I concur in reversing the trial court's decision on the motion to suppress on that basis.

{¶ 21} The trial court's decision, however, only addressed explicit consent, that of Diamond, thereafter relying on the doctrine of exigent circumstances. The Fourth Amendment to the U.S. Constitution provides:

> The right of the people to be secure in their persons, *houses*, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

(Emphasis added.) Homes are "first among equals" when it comes to spaces protected by the Fourth Amendment. *Florida v. Jardines*, 569 U.S. 1, 6 (2013). A search of a home absent a warrant is "presumptively unreasonable." *Collins v. Virginia*, ___ U.S. ___, 138 S.Ct. 1663, 1670 (2018). Thus, "[w]hen a defendant moves to suppress evidence recovered during a warrantless search, the state has the burden of showing that the search fits within one of the defined exceptions to the Fourth Amendment's warrant requirement." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 18, citing *Athens v. Wolf*, 38 Ohio St.2d 237, 241 (1974).

{¶ 22} One exception to the warrant requirement specifically concerning homes is when an ongoing emergency or exigent circumstance "make[s] the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." (Brackets, quotation marks, and citations omitted.) *Kentucky v. King*, 563 U.S. 452, 460 (2011). Examples of this include law enforcement's need "to assist persons who are seriously injured or threatened with such injury," or, phrased differently, to provide "emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006); *see also Michigan v. Fisher*, 558 U.S. 45, 47-48 (2009) (per curiam). Other classic examples of such exigent emergencies are "hot pursuit" of a fleeing suspect, *United States v. Santana*, 427 U.S. 38, 42-43 (1976), entering a burning building to put out a fire and investigate its cause, *Michigan v. Tyler*, 436 U.S. 499, 509-10 (1978), or to prevent the imminent destruction of evidence, *Cupp v. Murphy*, 412 U.S. 291, 296 (1973). Whatever the species of exigency, however, there must be a "compelling need for official action and no time to secure a warrant." *Tyler* at 509.

{¶ 23} In this case, the State argued that the need to render emergency aid to T.T. was such an exigency.  (State's Brief at 12-30.)  The trial court disagreed, finding that, while T.T. was injured, her injuries did not appear serious, Diamond had already been secured, and the officer testified that he entered the house to "check on" her and to "get her side of the story," not to render emergency aid.  (June 11, 2018 Decision & Entry at 2-3.)  While the majority finds the state's first assignment of error moot, I would emphasize that there is no clear error in the trial court's conclusions based on its factual determinations concerning a lack of exigent circumstances.  Nor do I detect any error of law in the trial court's enunciation of the exigent circumstances exception to the warrant requirement.

{¶ 24} With that addition, I respectfully concur in the decision of the majority.

_____